**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| Arthrex, Inc., | § | |
| | § | |
| *Plaintiff,* | § | |
| *Counter-Claim Defendant,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:16-CV-1041-RSP |
| | § | |
| Smith & Nephew, Inc., and | § | JURY TRIAL DEMANDED |
| ArthroCare Corp., | § | |
| | § | |
| *Defendants,* | § | |
| *Counter-Claim Plaintiffs.* | § | |

## COMPLAINT FOR PATENT INFRINGEMENT

The Court opened Case No. 2:16-cv-1041 pursuant to the parties' Joint Motion to Sever and Stay United States Patent Nos. 6,214,031, 6,511,499 and 7,195,631 (Dkt. No. 174 in Case No. 2:15-cv-1047-RSP). Pursuant to this Court's Order [Docket No. 178 in Case 2:15-cv-01047], Plaintiff Arthrex, Inc. (hereinafter "Arthrex") files Complaint for Patent Infringement relating to the severed claims.

This is an action for patent infringement in which Plaintiff, Arthrex, Inc. (hereinafter "Arthrex"), complains against Defendants, Smith & Nephew, Inc. (hereinafter "Smith & Nephew" or "Defendant") and alleges as follows:

### PARTIES

1.      Arthrex is a Delaware corporation having its principal place of business at 1370 Creekside Boulevard, Naples, Florida  34108.

2.      Smith & Nephew is a Delaware corporation with its principal place of business at 1450 E.

## JURISDICTION AND VENUE

3.      This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question) and § 1338 (patents).

4.      Smith & Nephew is subject to personal jurisdiction in this Court.  In particular, this Court has personal jurisdiction over Smith & Nephew because it has engaged in such continuous, systematic, and substantial activities within this State, including substantial marketing and sales of products in this State and in this judicial district.  Furthermore, upon information and belief, this Court has personal jurisdiction over Smith & Nephew in this case because Smith & Nephew has committed acts giving rise to Arthrex's claim for patent infringement within and directed to this judicial district.  Finally, this Court has personal jurisdiction over Smith & Nephew as a result of Smith & Nephew availing itself of this Court to bring suit against Arthrex for patent infringement in the past. [See e.g., *Arthrex, Inc. v.*, *Smith & Nephew Inc., et al.,* Eastern District of Texas, filed on June 17, 2015, Case No. 2:15-cv-1047, initially assigned to the Honorable Rodney Gilstrap; *Arthrex, Inc.*, *v. Smith & Nephew, Inc., et al.,* Eastern District of Texas, filed on Nov. 10, 2015, Case No. 2:15-cv-01756, initially assigned to the Honorable Rodney Gilstrap; *Smith & Nephew Inc. v. Arthrex, Inc.*, Eastern District of Texas, filed on Aug. 7, 2007, Case No. 2:07-cv-00335, initially assigned to the Honorable T. John Ward]

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(b).

## BACKGROUND

6.      Arthrex is an innovative company that designs, manufactures, and sells inventive medical devices used to treat patients suffering from a variety of injuries. Among other things, Arthrex designs, manufactures, and sells medical devices in the field of orthopedic medicine including, but not limited to, suture anchors, interference screws, and drill guides for use in various surgical procedures.

7.      Arthrex is uniquely focused on improving the treatment of patients by investing in research and development and by advancing medicine through surgeon training and education. To that end, Arthrex also offers a comprehensive program of educational and support services to orthopedic surgeons.

8.      Arthrex protects its intellectual property in a variety of ways, including by obtaining patents on its inventive technology. Arthrex has over 200 patents, including patents directed to, for example, suture anchors, interference screws and other medical devices, as well as related instrumentation such as drill guides. Arthrex products covered by its patents are marked with a corresponding patent number.

9.      Smith & Nephew is a competitor of Arthrex and is also in the business of manufacturing and selling medical devices including, but not limited to, suture anchors, interference screws, and drill guides.

10.     Upon information and belief, Smith & Nephew monitors patent literature, including issued patents and published patent applications related to medical devices including, but not limited to, suture anchors, interference screws, and drill guides.

## ARTHREX'S PATENTS

11.     Surgeons in the field of orthopedic medicine frequently treat injured patients by reattaching or replacing their torn body tissue, such as a rotator cuff or an anterior cruciate

3

ligament.   Arthrex has obtained a number of patents relating to implants, assemblies, and instrumentation used for these surgical procedures.   The Arthrex implants and instrumentation at issue in this lawsuit relate to three patents obtained by Arthrex.   The patents are as follows:

### Arthrex's Corkscrew Patents

### U.S. Patent No. 6,511,499 B2

12.     On January 28, 2003, the United States Patent and Trademark Office duly and lawfully issued United States Patent No. 6,511,499 B2 ("the '499 patent"), entitled "Corkscrew Suture Anchor."  A true and correct copy of the '499 patent is attached hereto as Exhibit 1.

13.     The '499 patent names Reinhold Schmieding, R. Donald Grafton, and Mark Brunsvold as inventors.

14.     Arthrex is the owner by assignment of all right, title and interest in the '499 patent.

15.     The '499 patent generally relates to, *inter alia*, a novel suture anchor.

### U.S. Patent No. 6,214,031 B1

16.     On April 10, 2001, the United States Patent and Trademark Office duly and lawfully issued United States Patent No. 6,214,031 B1 ("the '031 patent"), entitled "Corkscrew Suture Anchor."  A true and correct copy of the '031 patent is attached hereto as Exhibit 2.

17.     The '031 patent names Reinhold Schmieding, R. Donald Grafton, and Mark Brunsvold as inventors.

18.     Arthrex is the owner by assignment of all right, title and interest in the '031 patent.

19.     The '031 patent generally relates to, *inter alia*, a novel suture anchor.

### U.S. Patent No. 7,195,634 B2

20.     On March 27, 2007, the United States Patent and Trademark Office duly and lawfully issued United States Patent No. 7,195,634 B2 ("the '634 patent"), entitled "Corkscrew Suture Anchor."  A true and correct copy of the '634 patent is attached hereto as Exhibit 3.

21.     The '634 patent names Reinhold Schmieding, R. Donald Grafton, and Mark Brunsvold as inventors.

22.     Arthrex is the owner by assignment of all right, title and interest in the '634 patent.

23.     The '634 patent generally relates to, *inter alia*, a novel suture anchor.

## COUNT I
## (DIRECT INFRINGEMENT OF U.S. PATENT 6,511,499 BY SMITH & NEPHEW)

24.     Arthrex incorporates by reference all of the preceding paragraphs as though fully set forth herein.

25.     The '499 patent remains valid, enforceable, and unexpired.

26.     Smith & Nephew is directly infringing and has directly infringed the '499 patent in violation of 35 U.S.C. § 271(a), including, without limitation, by making, using, selling, offering for sale, and/or importing, without license or authority, a suture anchor covered by at least one claim of the '499 patent, including, but not limited to, Smith & Nephew's MINITAC Ti suture anchors and/or TwinFix Ti suture anchors.

27.     Smith & Nephew's infringement of the '499 patent is and has been willful and deliberate.

28.     Smith & Nephew has knowledge of the '499 patent and that its actions infringed the '499 patent at least based on communications from Arthrex.  On June 10, 2015, Mr. John Schmieding sent a letter to Mr. Mark Gorman informing Smith & Nephew that it was, and continues to, infringe certain Arthrex patents, including the '499 patent. [Exhibit 4].  At a

minimum, Smith & Nephew was aware of the ʼ499 patent and the infringement of the ʼ499 patent as a result of this letter.

29.     Upon information and belief, Smith & Nephew also has knowledge of patents related to the suture anchor industry in general and would be aware of the ʼ499 patent.  Upon information and belief, Smith & Nephew also has knowledge of the ʼ499 patent through publicly available notices on Arthrex's website. [See e.g. Exhibit 5 and Printout of https://www.arthrex. com/shoulder/suture-anchors/products?types=all&locales=en&taxonomy=shoulder_suture _anchors_group&time=0&sort=datedesc, attached as Exhibit 6]. Upon information and belief, Smith & Nephew also has knowledge of the ʼ499 patent through publicly available Arthrex informational literature, including, but not limited to, those relating to Shoulder Repair Technology which indicate Arthrex's patents relevant to Arthrex's products and illustrated techniques. [See e.g. Exhibit 7].

30.     At the very least, based on Mr. Schmieding's June 10, 2015 letter to Mr. Gorman, Smith & Nephew's knowledge of Arthrex's patent portfolio in general, publicly available literature regarding Arthrex's patents, and its knowledge that Arthrex is a direct competitor in the relatively small suture anchor market, Smith & Nephew believed that there was a high probability that its acts, if taken, would result in direct infringement.

31.     Smith & Nephew knew of the ʼ499 patent, acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, knew or should have known of this likelihood, and ignored and/or disregarded that its actions constituted infringement of a valid and enforceable patent.

32.     Arthrex and Smith & Nephew are competitors.  Arthrex has suffered substantial damages and will suffer severe and irreparable harm as a result of Smith & Nephew's infringement,

unless that infringement is enjoined by this Court.  The threatened injury to Arthrex outweighs any harm that the injunction may cause to Smith & Nephew.  Injunctive relief would not disserve the public interest under these circumstances.

## COUNT II
## (INDUCED INFRINGEMENT OF U.S. PATENT 6,511,499 BY SMITH & NEPHEW)

33.     Arthrex incorporates by reference all of the preceding paragraphs as though fully set forth herein.

34.     The '499 patent remains valid, enforceable, and unexpired.

35.     With knowledge of the '499 patent, Smith & Nephew has induced and continues to induce the infringement of at least one claim of the '499 patent under 35 U.S.C. § 271(b) by selling, offering to sell, and/or importing, without license or authority, a suture anchor including, but not limited to, Smith & Nephew's MINITAC Ti suture anchors and/or TwinFix Ti suture anchors for use by its orthopedic surgeon customers, and/or has supplied or caused to be supplied, and continues to supply or cause to be supplied, in or from the United States all or a substantial portion of the components of these suture anchors covered by the '499 patent, uncombined in whole or in part, without license or authority, so as to actively induce the combination of such components outside the United States by its orthopedic surgeon customers in a manner that would infringe at least one claim of the '499 patent if such combination occurred within the United States in violation of 35 U.S.C. § 271(f)(1).  In light of Smith & Nephew's inducement and/or supply, these orthopedic surgeon customers directly infringe the '499 patent by making, assembling, and/or using Smith & Nephew's MINITAC Ti suture anchors and/or TwinFix Ti suture anchors in their surgeries thereby reading on at least one claim of the '499 patent.

36.     Smith & Nephew specifically intended its customers to infringe the '499 patent and knew that its customers' acts constituted infringement, or at the very least, was willfully blind to

the fact that surgeons' use and/or assembly of Smith & Nephew's MINITAC Ti suture anchors and/or TwinFix Ti suture anchors would directly infringe the '499 patent.  Despite a high likelihood that its actions would induce its surgeon customers' direct infringement of the '499 patent, Smith & Nephew marketed and sold its MINITAC Ti suture anchors and/or TwinFix Ti suture anchors to orthopedic surgeons for use and/or assembly in their surgeries.  These orthopedic surgeons directly infringe the '499 patent by making, assembling, and/or using Smith & Nephew's MINITAC Ti suture anchors and/or TwinFix Ti suture anchors following the instructions for use and other instructional literature and/or information prepared and provided by Smith & Nephew for these suture anchors.  These materials are publicly available and/or provided with Smith & Nephew's MINITAC Ti suture anchors and/or TwinFix Ti suture anchors.

37.     Smith & Nephew knew that the surgeons' actions, when performed, would directly infringe the '499 patent. Smith & Nephew has knowledge of the '499 patent and its infringement of the '499 patent, or willfully blinded itself to such knowledge, at the very least based on communications from Arthrex.  On June 10, 2015, Mr. John Schmieding sent a letter to Mr. Mark Gorman informing Smith & Nephew that it was, and continues to, infringe certain Arthrex patents, including the '499 patent. [Exhibit 4].  At a minimum, Smith & Nephew was aware of the '499 patent and the infringement of the '499 patent as a result of this letter.

38.     Upon information and belief, Smith & Nephew also has knowledge of patents related to the suture anchor industry in general and would be aware of the '499 patent.  Upon information and belief, Smith & Nephew also has knowledge of the '499 patent through publicly available notices on Arthrex's website. [See e.g. Exhibits 5 - 6 ].

39.     Upon information and belief, Smith & Nephew also has knowledge of the '499 patent through publicly available Arthrex informational literature, including, but not limited to,

those relating to Shoulder Repair Technology which indicate Arthrex's patents relevant to Arthrex's products and illustrated techniques. [See e.g. Exhibit 7].

40.     Upon information and belief, Smith & Nephew has not made any changes to any of its MINITAC Ti suture anchors and/or TwinFix Ti suture anchors despite its knowledge of the ʹ499 patent.

41.     Upon information and belief, Smith & Nephew has not made any changes to any of its publicly available instructional product literature, including the instructions for use, for its MINITAC Ti suture anchors and/or TwinFix Ti suture anchors despite its knowledge of the ʹ499 patent.

42.     At the very least, based on Smith & Nephew's knowledge of Arthrex's patent portfolio in general, the June 10, 2015 letter from Mr. Schmieding to Mr. Gorman, Smith & Nephew's knowledge that Arthrex is a direct competitor in the relatively small suture anchor market, and its use of instructional literature and/or information that promotes direct infringements by surgeons, Smith & Nephew believed that there was a high probability that its acts, if taken, would result in direct infringement of the ʹ499 patent by its surgeon customers, yet deliberately avoided confirming that belief.  At the very least, Smith & Nephew willfully blinded itself to the existence of the ʹ499 patent, and therefore willfully blinded itself to surgeons' direct infringement of the ʹ499 patent resulting from the surgeons' use and/or assembly of Smith & Nephew's MINITAC Ti suture anchors and/or TwinFix Ti suture anchors.

43.     Smith & Nephew knew of the ʹ499 patent, acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, knew or should have known of this likelihood, and ignored and/or disregarded that its actions constituted infringement of a valid and enforceable patent.

9

44.     As a result, Smith & Nephew's infringement of the '499 patent is and has been willful and deliberate.

45.     Arthrex and Smith & Nephew are competitors.  As a result of Smith & Nephew's inducement of infringement, Arthrex will suffer severe and irreparable harm, unless that infringement is enjoined by this Court, and has suffered substantial damages.  The threatened injury to Arthrex outweighs any harm that the injunction may cause to Smith & Nephew. Injunctive relief would not disserve the public interest under these circumstances.

## COUNT III
## (DIRECT INFRINGEMENT OF U.S. PATENT 6,214,031 BY SMITH & NEPHEW)

46.     Arthrex incorporates by reference all of the preceding paragraphs as though fully set forth herein.

47.     The '031 patent remains valid, enforceable, and unexpired.

48.     Smith & Nephew is directly infringing and has directly infringed the '031 patent in violation of 35 U.S.C. § 271(a), including, without limitation, by making, using, selling, offering for sale, and/or importing, without license or authority, a suture anchor covered by at least one claim of the '031 patent, including, but not limited to, Smith & Nephew's TwinFix Ti suture anchors.

49.     Smith & Nephew's infringement of the '031 patent is and has been willful and deliberate.

50.     Smith & Nephew also has knowledge of the '031 patent and that its actions infringed the '031 patent at least based on communications from Arthrex.  On June 10, 2015, Mr. John Schmieding sent a letter to Mr. Mark Gorman informing Smith & Nephew that it was, and continues to, infringe certain Arthrex patents, including the '031 patent. [Exhibit 4].   At a

minimum, Smith & Nephew was aware of the -031 patent and the infringement of the -031 patent as a result of this letter.

51.     Upon information and belief, Smith & Nephew also has knowledge of patents related to the suture anchor industry in general and would be aware of the -031 patent.  Upon information and belief, Smith & Nephew also has knowledge of the -031 patent through publicly available notices on Arthrex's website. [See e.g. Exhibits 5 - 6].

52.     Upon information and belief, Smith & Nephew also has knowledge of the -031 patent through publicly available Arthrex informational literature, including, but not limited to, those relating to Shoulder Repair Technology, which indicate Arthrex's patents relevant to Arthrex's products and illustrated techniques. [See e.g. Exhibit 7].

53.     At the very least, based on Mr. Schmieding's June 10, 2015 letter to Mr. Gorman, Smith & Nephew's knowledge of Arthrex's patent portfolio in general, publicly available literature regarding Arthrex's patents, and its knowledge that Arthrex is a direct competitor in the relatively small suture anchor market, Smith & Nephew believed that there was a high probability that its acts, if taken, would result in direct infringement.

54.     Smith & Nephew knew of the -031 patent, acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, knew or should have known of this likelihood, and ignored and/or disregarded that its actions constituted infringement of a valid and enforceable patent.

55.     Arthrex and Smith & Nephew are competitors.  Arthrex has suffered substantial damages and will suffer severe and irreparable harm as a result of Smith & Nephew's infringement, unless that infringement is enjoined by this Court.  The threatened injury to Arthrex outweighs any

harm that the injunction may cause to Smith & Nephew.  Injunctive relief would not disserve the public interest under these circumstances.

## COUNT IV
## (INDUCED INFRINGEMENT OF U.S. PATENT 6,214,031 BY SMITH & NEPHEW)

56.    Arthrex incorporates by reference all of the preceding paragraphs as though fully set forth herein.

57.    The '031 patent remains valid, enforceable, and unexpired.

58.    With knowledge of the '031 patent, Smith & Nephew has induced and continues to induce the infringement of at least one claim of the '031 patent under 35 U.S.C. § 271(b) by selling, offering to sell, and/or importing, without license or authority, a suture anchor including, but not limited to, Smith & Nephew's TwinFix Ti suture anchors for use by its orthopedic surgeon customers, and/or has supplied or caused to be supplied, and continues to supply or cause to be supplied, in or from the United States all or a substantial portion of the components of these suture anchors covered by the '031 patent, uncombined in whole or in part, without license or authority, so as to actively induce the combination of such components outside the United States by its orthopedic surgeon customers in a manner that would infringe at least one claim of the '031 patent if such combination occurred within the United States in violation of 35 U.S.C. § 271(f)(1).  In light of Smith & Nephew's inducement and/or supply, these orthopedic surgeon customers directly infringe the '031 patent by making, assembling, and/or using Smith & Nephew's TwinFix Ti suture anchors in their surgeries thereby reading on at least one claim of the '031 patent.

59.    Smith & Nephew specifically intended its customers to infringe the '031 patent and knew that its customers' acts constituted infringement, or at the very least, was willfully blind to the fact that surgeons' use and/or assembly of Smith & Nephew's TwinFix Ti suture anchors would directly infringe the '031 patent.  Despite a high likelihood that its actions would induce its surgeon

customers' direct infringement of the -031 patent, Smith & Nephew marketed and sold its TwinFix Ti suture anchors to orthopedic surgeons for use and/or assembly in their surgeries.   These orthopedic surgeons directly infringe the -031 patent by making, assembling, and/or using Smith & Nephew's TwinFix Ti suture anchors following the instructions for use and other instructional literature and/or information prepared and provided by Smith & Nephew for these suture anchors. These materials are publicly available and/or provided with Smith & Nephew's TwinFix Ti suture anchors.

60.     Smith & Nephew knew that the surgeons' actions, when performed, would directly infringe the -031 patent. Smith & Nephew has knowledge of the -031 patent and its infringement of the -031 patent, or willfully blinded itself to such knowledge, at the very least based on communications from Arthrex.  On June 10, 2015, Mr. John Schmieding sent a letter to Mr. Mark Gorman informing Smith & Nephew that it was, and continues to, infringe certain Arthrex patents, including the -031 patent. [Exhibit 4].  At a minimum, Smith & Nephew was aware of the -031 patent and the infringement of the -031 patent as a result of this letter.

61.     Upon information and belief, Smith & Nephew also has knowledge of patents related to the suture anchor industry in general and would be aware of the -031 patent.  Upon information and belief, Smith & Nephew also has knowledge of the -031 patent through publicly available notices on Arthrex's website. [See e.g. Exhibits 5 - 6].

62.     Upon information and belief, Smith & Nephew also has knowledge of the -031 patent through publicly available Arthrex informational literature, including, but not limited to, those relating to Shoulder Repair Technology which indicate Arthrex's patents relevant to Arthrex's products and illustrated techniques. [See e.g. Exhibit 7].

63.     Upon information and belief, Smith & Nephew has not made any changes to any of Smith & Nephew's TwinFix Ti suture anchors despite its knowledge of the -031 patent.

64.     Upon information and belief, Smith & Nephew has not made any changes to any of its publicly available instructional product literature, including the instructions for use, for Smith & Nephew's TwinFix Ti suture anchors despite its knowledge of the -031 patent.

65.     At the very least, based on Smith & Nephew's knowledge of Arthrex's patent portfolio in general, the June 10, 2015 letter from Mr. Schmieding to Mr. Gorman, Smith & Nephew's knowledge that Arthrex is a direct competitor in the relatively small suture anchor market, and its use of instructional literature and/or information that promotes direct infringements by surgeons, Smith & Nephew believed that there was a high probability that its acts, if taken, would result in direct infringement of the -031 patent by its surgeon customers, yet deliberately avoided confirming that belief.  At the very least, Smith & Nephew willfully blinded itself to the existence of the -031 patent, and therefore willfully blinded itself to surgeons' direct infringement of the -031 patent resulting from the surgeons' use and/or assembly of Smith & Nephew's TwinFix Ti suture anchors.

66.     Smith & Nephew knew of the -031 patent, acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, knew or should have known of this likelihood, and ignored and/or disregarded that its actions constituted infringement of a valid and enforceable patent.

67.     As a result, Smith & Nephew's infringement of the -031 patent is and has been willful and deliberate.

68.     Arthrex and Smith & Nephew are competitors.  As a result of Smith & Nephew's inducement of infringement, Arthrex will suffer severe and irreparable harm, unless that

14

infringement is enjoined by this Court, and has suffered substantial damages.  The threatened injury to Arthrex outweighs any harm that the injunction may cause to Smith & Nephew. Injunctive relief would not disserve the public interest under these circumstances.

## COUNT V
## (DIRECT INFRINGEMENT OF U.S. PATENT 7,195,634 BY SMITH & NEPHEW)

69.     Arthrex incorporates by reference all of the preceding paragraphs as though fully set forth herein.

70.     The '634 patent remains valid, enforceable, and unexpired.

71.     Smith & Nephew is directly infringing and has directly infringed the '634 patent in violation of 35 U.S.C. § 271(a), including, without limitation, by making, using, selling, offering for sale, and/or importing, without license or authority, a suture anchor assembly covered by at least one claim of the '634 patent, including, but not limited to, Smith & Nephew's MINITAC Ti suture anchor assemblies and/or TwinFix Ti suture anchor assemblies.

72.     Smith & Nephew's infringement of the '634 patent is and has been willful and deliberate.

73.     Smith & Nephew also has knowledge of the '634 patent and that its actions infringed the '634 patent at least based on communications from Arthrex.  On June 10, 2015, Mr. John Schmieding sent a letter to Mr. Mark Gorman informing Smith & Nephew that it was, and continues to, infringe certain Arthrex patents, including the '634 patent. [Exhibit 4].  At a minimum, Smith & Nephew was aware of the '634 patent and the infringement of the '634 patent as a result of this letter.

74.     Upon information and belief, Smith & Nephew also has knowledge of patents related to the suture anchor industry in general and would be aware of the '634 patent.  Upon

information and belief, Smith & Nephew also has knowledge of the ˗634 patent through publicly available notices on Arthrex's website. [See e.g. Exhibits 5 - 6].

75.     Upon information and belief, Smith & Nephew also has knowledge of the ˗634 patent through publicly available Arthrex informational literature, including, but not limited to, those relating to Shoulder Repair Technology, which indicate Arthrex's patents relevant to Arthrex's products and illustrated techniques. [See e.g. Exhibit 7].

76.     At the very least, based on Mr. Schmieding's June 1, 2015 letter to Mr. Gorman, Smith & Nephew's knowledge of Arthrex's patent portfolio in general, publicly available literature regarding Arthrex's patents, and its knowledge that Arthrex is a direct competitor in the relatively small suture anchor market, Smith & Nephew believed that there was a high probability that its acts, if taken, would result in direct infringement.

77.     Smith & Nephew knew of the ˗634 patent, acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, knew or should have known of this likelihood, and ignored and/or disregarded that its actions constituted infringement of a valid and enforceable patent.

78.     Arthrex and Smith & Nephew are competitors.  Arthrex has suffered substantial damages and will suffer severe and irreparable harm as a result of Smith & Nephew's infringement, unless that infringement is enjoined by this Court.  The threatened injury to Arthrex outweighs any harm that the injunction may cause to Smith & Nephew.  Injunctive relief would not disserve the public interest under these circumstances.

## COUNT VI
## (INDUCED INFRINGEMENT OF U.S. PATENT 7,195,634 BY SMITH & NEPHEW)

79.     Arthrex incorporates by reference all of the preceding paragraphs as though fully set forth herein.

80.     The '634 patent remains valid, enforceable, and unexpired.

81.     With knowledge of the '634 patent, Smith & Nephew has induced and continues to induce the infringement of at least one claim of the '634 patent under 35 U.S.C. § 271(b) by selling, offering to sell, and/or importing, without license or authority, a suture anchor assembly including, but not limited to, Smith & Nephew's MINITAC Ti suture anchor assemblies and/or TwinFix Ti suture anchor assemblies for use by its orthopedic surgeon customers, and/or has supplied or caused to be supplied, and continues to supply or cause to be supplied, in or from the United States all or a substantial portion of the components of these suture anchor assemblies covered by the '634 patent, uncombined in whole or in part, without license or authority, so as to actively induce the combination of such components outside the United States by its orthopedic surgeon customers in a manner that would infringe at least one claim of the '634 patent if such combination occurred within the United States in violation of 35 U.S.C. § 271(f)(1).  In light of Smith & Nephew's inducement and/or supply, these orthopedic surgeon customers directly infringe the '634 patent by making, assembling, and/or using Smith & Nephew's MINITAC Ti suture anchor assemblies and/or TwinFix Ti suture anchor assemblies in their surgeries thereby reading on at least one claim of the '634 patent.

82.     Smith & Nephew specifically intended its customers to infringe the '634 patent and knew that its customers' acts constituted infringement, or at the very least, was willfully blind to the fact that surgeons' use and/or assembly of Smith & Nephew's MINITAC Ti suture anchor assemblies and/or TwinFix Ti suture anchor assemblies would directly infringe the '634 patent. Despite a high likelihood that its actions would induce its surgeon customers' direct infringement of the '634 patent, Smith & Nephew marketed and sold its MINITAC Ti suture anchor assemblies and/or TwinFix Ti suture anchor assemblies to orthopedic surgeons for use and/or assembly in

their surgeries. These orthopedic surgeons directly infringe the ʹ634 patent by making, assembling, and/or using Smith & Nephewʹs MINITAC Ti suture anchor assemblies and/or TwinFix Ti suture anchor assemblies following the instructions for use and other instructional literature and/or information prepared and provided by Smith & Nephew for these suture anchors. These materials are publicly available and/or provided with Smith & Nephewʹs MINITAC Ti suture anchor assemblies and/or TwinFix Ti suture anchor assemblies.

83.    Smith & Nephew knew that the surgeonsʹ actions, when performed, would directly infringe the ʹ634 patent. Smith & Nephew has knowledge of the ʹ634 patent and its infringement of the ʹ634 patent, or willfully blinded itself to such knowledge, at the very least based on communications from Arthrex.  On June 10, 2015, Mr. John Schmieding sent a letter to Mr. Mark Gorman informing Smith & Nephew that it was, and continues to, infringe certain Arthrex patents, including the ʹ634 patent. [Exhibit 4].  At a minimum, Smith & Nephew was aware of the ʹ634 patent and the infringement of the ʹ634 patent as a result of this letter.

84.    Upon information and belief, Smith & Nephew also has knowledge of patents related to the suture anchor industry in general and would be aware of the ʹ634 patent.  Upon information and belief, Smith & Nephew also has knowledge of the ʹ634 patent through publicly available notices on Arthrexʹs website. [See e.g. Exhibits 5 - 6].

85.    Upon information and belief, Smith & Nephew also has knowledge of the ʹ634 patent through publicly available Arthrex informational literature, including, but not limited to, those relating to Shoulder Repair Technology, which indicate Arthrexʹs patents relevant to Arthrexʹs products and illustrated techniques. [See e.g. Exhibit 7].

86.     Upon information and belief, Smith & Nephew has not made any changes to any of Smith & Nephew's MINITAC Ti suture anchor assemblies and/or TwinFix Ti suture anchor assemblies despite its knowledge of the '634 patent.

87.     Upon information and belief, Smith & Nephew has not made any changes to any of its publicly available instructional product literature, including the instructions for use, for Smith & Nephew's MINITAC Ti suture anchor assemblies and/or TwinFix Ti suture anchor assemblies despite its knowledge of the '634 patent.

88.     At the very least, based on Smith & Nephew's knowledge of Arthrex's patent portfolio in general, the June 10, 2015 letter from Mr. Schmieding to Mr. Gorman, Smith & Nephew's knowledge that Arthrex is a direct competitor in the relatively small suture anchor market, and its use of instructional literature and/or information that promotes direct infringements by surgeons, Smith & Nephew believed that there was a high probability that its acts, if taken, would result in direct infringement of the '634 patent by its surgeon customers, yet deliberately avoided confirming that belief.  At the very least, Smith & Nephew willfully blinded itself to the existence of the '634 patent, and therefore willfully blinded itself to surgeons' direct infringement of the '634 patent resulting from the surgeons' use and/or assembly of its MINITAC Ti suture anchor assemblies and/or TwinFix Ti suture anchor assemblies.

89.     Smith & Nephew knew of the '634 patent, acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, knew or should have known of this likelihood, and ignored and/or disregarded that its actions constituted infringement of a valid and enforceable patent.

90.     As a result, Smith & Nephew's infringement of the '634 patent is and has been willful and deliberate.

91.    Arthrex and Smith & Nephew are competitors.  As a result of Smith & Nephew's inducement of infringement, Arthrex will suffer severe and irreparable harm, unless that infringement is enjoined by this Court, and has suffered substantial damages. The threatened injury to Arthrex outweighs any harm that the injunction may cause to Smith & Nephew.  Injunctive relief would not disserve the public interest under these circumstances.

## **PRAYER FOR RELIEF**

WHEREFORE, Arthrex requests judgment in its favor against Smith & Nephew and ArthroCare for the following relief:

A.    A judgment in favor of Plaintiff that Smith & Nephew has directly infringed the '499, '031 and '634 patents;

B.    A judgment in favor of Plaintiff that Smith & Nephew has indirectly infringed the '499, '031 and '634 patents;

C.    A preliminary and permanent injunction enjoining Smith & Nephew, its officers, directors, agents, servants, employees and those persons in active concert or participation with Smith & Nephew, from infringing the '499, '031 and '634 patents in violation of 35 U.S.C. § 271;

D.    An award of damages adequate to compensate Plaintiff for Smith & Nephew's infringement, including lost profits and a reasonable royalty;

E.    An order adjudging Smith & Nephew to have deliberately and willfully infringed the '499, '031 and '634 patents and trebling, or otherwise increasing, Plaintiff's damages under 35 U.S.C. § 284.

F.    A judgment in favor of Plaintiff that this is an exceptional case;

G.    An award to Plaintiff of its attorney fees and its costs and expenses incurred in connection with this action pursuant to 35 U.S.C. § 285;

H.    An award of prejudgment and post-judgment interest and costs of this action; and

I.    Such other and further relief that this Court deems just and proper.

## JURY DEMAND

Arthrex demands a trial by jury on all issues so triable.


                                    Respectfully submitted,


Dated: October 11, 2016             __/s/ Jaye Quadrozzi_____
                                    Rodger D. Young
                                    State Bar No. P22652
                                    young@youngpc.com
                                    Jaye Quadrozzi
                                    State Bar No. P71646
                                    quadrozzi@youngpc.com
                                    **YOUNG & ASSOCIATES**
                                    27725 Stansbury Boulevard Suite 125
                                    Farmington Hills, MI 48334
                                    (248) 353-8620
                                    (248) 479-7828 (fax)
                                    efiling@youngpc.com

                                    Eric M. Albritton
                                    Texas State Bar No. 00790215
                                    ema@emafirm.com
                                    Shawn A. Latchford
                                    Texas State Bar No. 24066603
                                    sal@emafirm.com
                                    **ALBRITTON LAW FIRM**
                                    P.O. Box 2649
                                    Longview, Texas 75606
                                    Telephone: (903) 757-8449
                                    Facsimile: (903) 758-7397

                                    Edward Chin
                                    Texas State Bar No. 50511688
                                    ekc@emafirm.com
                                    Anthony K. Bruster, Of Counsel
                                    Texas State Bar No. 24036280
                                    akb@emafirm.com
                                    Andrew J. Wright, Of Counsel
                                    Texas State Bar No. 24063927

ajw@emafirm.com
**ALBRITTON LAW FIRM**
1330 North White Chapel Blvd. Suite 100
Southlake, Texas 76092
Telephone: (817) 251-0610
Facsimile: (903) 758-7397

**CARLSON, GASKEY & OLDS, PC**
Anthony P. Cho
State Bar No. P46910
acho@cgolaw.com
David L. Atallah
State Bar No. P73403
datallah@cgolaw.com
Carlson, Gaskey & Olds, PC
400 West Maple, Suite 350
Birmingham, MI 48009
Telephone: (248) 988-8360
Facsimile: (248) 988-8363

*Counsel for Arthrex, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this the 11th day of October 2016.

*/s/ Jaye Quadrozzi*
Jaye Quadrozzi